**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | |
|---|---|
| **VELOCITY COMMUNICATION TECHNOLOGIES, LLC,** | **Case No. 5:25-cv-00101-RWS** |
| **Plaintiff,** | |
| **v.** | **JURY TRIAL DEMANDED** |
| **CISCO SYSTEMS, INC.,** | |
| **Defendant.** | |

**PLAINTIFF VELOCITY COMMUNICATION TECHNOLOGIES, LLC'S OPPOSITION
TO DEFENDANT CISCO SYSTEMS, INC.'S FED. R. CIV. P. 12(c) MOTION FOR
JUDGMENT ON THE PLEADINGS AS TO THE INELIGIBILITY OF CERTAIN
ASSERTED PATENTS, NO PRE-SUIT WILLFULNESS, AND NO PRE-SUIT INDUCED
<u>OR CONTRIBUTORY INFRINGEMENT</u>**

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................... 1

II.    LEGAL STANDARDS .................................................................................................. 1

III.    ARGUMENT .................................................................................................................. 1

    A.    The '870 Family Is Patent Eligible ................................................................. 1

        1.    Claim 1 of the '401 Patent Is Not Representative of the Entire '870 Family ....... 1

        2.    The '401 Patent Is Not Directed To An Abstract Idea (*Alice* Step One) .............. 4

        3.    The '401 Patent Claims Contain Inventive Concepts (*Alice* Step Two) .............. 7

        4.    Cisco's "Eligibility Allegations" Argument Improperly Collapses Distinct Patents And Blurs The *Alice* Inquiry ........................................................................ 9

    B.    The '343 Patent Is Patent Eligible ................................................................. 10

        1.    Cisco Has Not Shown That Claim 10 Of The '343 Patent Is Representative ..... 10

        2.    The '343 Patent Is Not Directed To An Abstract Idea (*Alice* Step One) ............ 11

        3.    The '343 Patent Claims Contain Inventive Concepts (*Alice* Step Two) ............. 12

    C.    The FAC Plausibly Alleges Willful And Indirect Infringement ................................ 13

        1.    The FAC Plausibly Pleads Willful Infringement Claims .................................... 13

        2.    The FAC Plausibly Pleads Induced and Contributory Infringement Claims ...... 15

IV.    CONCLUSION .................................................................................................................. 15

## TABLE OF AUTHORITIES

### CASES

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
   882 F.3d 1121 (Fed. Cir. 2018)............................................................................ 12

*Affinity Labs of Tex. v. DIRECTV, LLC*,
   838 F.3d 1253 (Fed. Cir. 2016).............................................................................. 6

*Alice Corp. v. CLS Bank Int'l*,
   573 U.S. 208 (2014)....................................................................................... *passim*

*Atlas Glob. Techs. LLC v. TP-Link Techs. Co.*,
   2023 U.S. Dist. LEXIS 148320 (E.D. Tex. Aug. 4, 2023) ............................... 14

*BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed. Cir. 2016)............................................................................. 9

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018)................................................................... 1, 8, 13

*BSG Tech LLC v. BuySeasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018)........................................................................... 13

*Cardware, Inc. v. Google, LLC*,
   2025 U.S. Dist. LEXIS 158674 (W.D. Tex. Aug. 15, 2025) ............................... 4

*ChargePoint, Inc. v. SemaConnect, Inc.*,
   920 F.3d 759 (Fed. Cir. 2019)............................................................................. 10

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
   776 F.3d 1343 (Fed. Cir. 2014)............................................................................. 2

*Dialect, LLC v. Bank of Am.*,
   2024 U.S. Dist. LEXIS 219290 (E.D. Tex. Dec. 3, 2024)................................. 14

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
   815 F. App'x 529 (Fed. Cir. 2020) ..................................................................... 12

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016)................................................................... 5, 7, 12

*Entropic Commc'ns, LLC v. DISH Network Corp.*,
   767 F. Supp. 3d 1043 (C.D. Cal. 2025) .............................................................. 12

*Intellectual Ventures II LLC v. Sprint Spectrum, L.P.*,
   2018 U.S. Dist. LEXIS 218058 (E.D. Tex. Sept. 24, 2018) ............................. 2, 4

*Mandujano v. City of Pharr*,
   786 F. App'x 434 (5th Cir. 2019) ......................................................................... 1

*Mote v. Walthall*,
   2017 U.S. Dist. LEXIS 17574 (E.D. Tex. Feb. 8, 2017) ..................................... 1

*Motiva Patents, LLC v. Sony Corp.*,
   408 F. Supp. 3d 819 (E.D. Tex. 2019).................................................................. 14

*Orostream LLC v. ABS-CBN Int'l,*
    2015 U.S. Dist. LEXIS 134199 (E.D. Tex. Oct. 1, 2015). ................................................ 6

*Packet Intelligence LLC v. NetScout Systems, Inc.*,
    965 F.3d 1299 (Fed. Cir. 2020)................................................................................... 5

*Perdiemco, LLC v. Industrack LLC,*
    2016 U.S. Dist. LEXIS 135667 (E.D. Tex. Sept. 21, 2016) ........................................ 3, 11

*PPS Data, LLC v. Jack Henry & Assocs.,*
    2019 U.S. Dist. LEXIS 47492 (E.D. Tex. Mar. 21, 2019)............................................ 2, 6

*Rsch. Found. for the State Univ. of N.Y. v. Xiaomi Corp.,*
    2025 U.S. Dist. LEXIS 56859 (E.D. Tex. Mar. 3, 2025)............................................ 14, 15

*SAP America v. InvestPic,*
    898 F.3d 1161 (Fed. Cir. 2018)................................................................................. 13

*Slyce Acquisition v. Syte-Visual Conception,*
    2020 U.S. Dist. LEXIS 9451 (W.D. Tex. Jan. 10, 2020)................................................ 1

*Smartflash LLC v. Apple Inc.,*
    680 F. App'x 977 (Fed. Cir. 2017) ............................................................................. 8

*Soar Tools, LLC v. Mesquite Oil Tools, Inc.,*
    2020 U.S. Dist. LEXIS 166493 (N.D. Tex. Sep. 11, 2020)............................................ 15

*TecSec, Inc. v. Adobe Inc.,*
    978 F.3d 1278 (Fed. Cir. 2020)................................................................................ 6, 10

*Thales Visionix Inc. v. United States,*
    850 F.3d 1343 (Fed. Cir. 2017)................................................................................. 5

*VoIP-Pal.com, Inc. v. Huawei Techs. Co.,*
    2024 U.S. Dist. LEXIS 78355 (N.D. Tex. Apr. 30, 2024)............................................ 3, 11

**STATUTES**

35 U.S.C. § 101 ................................................................................................... *passim*

**RULES**

Fed. R. Civ. P. 12(b)(6)................................................................................... 1, 13, 15

Fed. R. Civ. P. 12(c) ..................................................................................... 1, 4, 6, 12

## I.    INTRODUCTION

Defendant Cisco Systems, Inc. ("Cisco") seeks partial judgment on the pleadings of Plaintiff Velocity Communication Technologies, LLC's ("Velocity") First Amended Complaint (Dkt. No. 22, hereinafter "FAC") under Federal Rule of Civil Procedure 12(c).  Dkt. No. 25 (hereinafter "Motion" or "Mot.").  Cisco seeks to invalidate a subset of Velocity's asserted patents under 35 U.S.C. § 101 and dismiss the FAC's willful and indirect infringement claims.  Cisco's § 101 challenge fails because Cisco has not met its burden to show any asserted claim is properly representative or that the patents, considered as a whole, are "directed to" abstract ideas rather than specific technological improvements in the operation of wireless hardware under *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014).  Both the FAC and intrinsic record demonstrate the asserted claims recite defined, hardware-implemented architectures and ordered combinations of elements that improve how communication systems function—precluding dismissal under *Alice*.

The FAC plausibly alleges both willful and indirect infringement, including Cisco's pre-suit knowledge and willful blindness.  Cisco's Motion should be denied.

## II.    LEGAL STANDARDS

The same standard governs motions under Rules 12(b)(6) and 12(c); all well-pled facts must be accepted as true and all reasonable inferences must be drawn in favor of the non-movant. *Mandujano v. City of Pharr*, 786 F. App'x 434, 437 (5th Cir. 2019); *Mote v. Walthall*, 2017 U.S. Dist. LEXIS 17574, at *4 (E.D. Tex. Feb. 8, 2017).  Because patents are presumed valid, eligibility rarely can be resolved on the pleadings. *Slyce Acquisition v. Syte-Visual Conception*, 2020 U.S. Dist. LEXIS 9451, at *10-14 (W.D. Tex. Jan. 10, 2020).  Section 101 invalidity involves a two-step analysis under *Alice*, analyzing: (1) whether the claims are "directed to" an abstract idea, and if so, (2) whether they include an "inventive concept" that transforms the idea into a patent-eligible application.  573 U.S. at 213-18.  Whether a claim is "well-understood, routine, and conventional" is a factual question. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018).

## III.    ARGUMENT

### A.    The '870 Family Is Patent Eligible

#### 1.    Claim 1 of the '401 Patent Is Not Representative of the Entire '870 Family

1

Cisco's Motion collapses eighty-nine claims across four distinct patents—U.S. Patent Nos. 8,213,870, 8,644,765, 9,083,401, and 10,200,096 (collectively, "the '870 Family")—into a single claim from a single patent without meeting its threshold burden.  Mot. at 3-6.  When a movant relies on a representative claim in a § 101 challenge, it first must prove the other claims are "substantially similar and linked to the same abstract idea."  *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).  Only then does any burden shift to the patent owner.  Cisco devotes one paragraph to asserting that "[c]laim 1 of the '401 Patent is representative because all the claims are directed to the same two abstract feedback features"—followed by reproduction of claim 1 and a few footnotes purporting to dispose of every other claim as "conventional."  Mot. at 5-6, n.1-11.  Such a cursory showing is the kind of "high-level, conclusory statement" courts reject as inadequate.  *Intellectual Ventures II LLC v. Sprint Spectrum, L.P.*, 2018 U.S. Dist. LEXIS 218058, at *13-14 (E.D. Tex. Sept. 24, 2018).

First, Cisco never shows the four patents claim the same invention.  Although they share portions of a specification, they address related but distinct technical problems and disclose different solutions.  *See PPS Data, LLC v. Jack Henry & Assocs.*, 2019 U.S. Dist. LEXIS 47492, at *12 (E.D. Tex. Mar. 21, 2019) (although patents shared the same specification, defendants failed to show they claimed the "*same* invention") (emphasis in original).  The '870 and '765 Patents disclose directional probing with iterative transmission and quality-metric-driven adaptation (FAC ¶¶ 63–64, 77–78); the '401 Patent discloses channel-estimate-driven selection with adaptive re-selection (FAC ¶¶ 87–90); and the '096 Patent discloses codebook testing with explicit quality comparison.  FAC ¶¶ 102–03.  Cisco nowhere analyzes these differences or explains why they represent a single invention.  *See PPS Data*, 2019 U.S. Dist. LEXIS 47492, at *11–12.

Second, Cisco's footnotes provide only labels, not analysis.  Each footnote declares a limitation was "already known" or "just a more specific result," without examining whether the ordered combinations were conventional.  For example, Cisco dismisses directional-antenna limitations as "already known" (Mot. at 5 n.2), but the FAC explains the inventive combination of storing predefined matrices in a codebook, using them for directional beamforming, and adaptively

2

selecting based on quality metrics was not routine.  FAC ¶¶ 65–66, 69.  Cisco asserts that claims requiring iteration "until an acknowledgment is received" merely specify a result (Mot. at 6 n.4), ignoring those claims implement an acknowledgment-driven control loop that improves range and reduces overhead.[1]  FAC ¶¶ 63–64, 69.  And it calls packet-error-rate and data-rate thresholds "conventionally known" (Mot. at 6, n.5-6), overlooking that these different triggering conditions alter physical-layer behavior and were not conventional as an ordered combination.  FAC ¶¶ 65, 99, 101-02.  Knowing individual elements existed does not establish the specific claimed combinations were well-understood, routine, or conventional. *Perdiemco, LLC v. Industrack LLC*, 2016 U.S. Dist. LEXIS 135667, at *21–23 (E.D. Tex. Sept. 21, 2016), *report and recommendation adopted*, No. 2:15-CV-727-JRG, Dkt. No. 237 (Sept. 29, 2016).

Third, Cisco ignores fundamental structural and algorithmic differences among the patents. The FAC shows the '096 Patent includes receiver-side claims disclosing receiving data packets, determining reception quality, and providing feedback to the transmitter (FAC ¶¶ 96, 99-100), operations and hardware that are absent from the transmitter-side claims of the '870, '765, and '401 Patents.  Courts reject representativeness arguments across such perspective shifts. *VoIP-Pal.com, Inc. v. Huawei Techs. Co.*, 2024 U.S. Dist. LEXIS 78355, at *10 (N.D. Tex. Apr. 30, 2024) (method claims could not represent apparatus or means-plus-function claims that "differ in the nature and type of claim").  Even among transmitter-side claims, the control algorithms differ: the '401 Patent performs iterative selection with adaptive re-selection based (FAC ¶¶ 87–90), while the '096 Patent performs testing of every matrix with explicit quality comparison before selection.  *Id.* ¶¶ 102-03.  These distinct algorithms impose different latency and overhead characteristics, confirming the claims cannot all be treated alike under § 101.

Finally, Cisco's reliance on a single method claim from one patent to represent apparatus and system claims in others underscores the superficiality of its showing.  The Motion consists of one paragraph and 11 footnotes—no substantive comparison of claim elements, no analysis of

---

[1] Cisco's "Marco Polo" analogy mischaracterizes the claims.  Mot. at 6.  The Patents describe algorithmic beamforming sequences performed by transmitter hardware under defined control logic—not random, human-like searching.

hardware or process differences, and no explanation why those differences are purportedly immaterial.  Cisco has not demonstrated claim 1 of the '401 Patent represents any other claim of that Patent, let alone three others; its § 101 challenge to the '870 Family fails at the threshold.  *See Cardware, Inc. v. Google, LLC*, 2025 U.S. Dist. LEXIS 158674, at *8 (W.D. Tex. Aug. 15, 2025), *report and recommendation adopted*, No. 24-CV-00278-DC, Dkt. No. 102 (Sept. 3, 2025).

   2.   The '401 Patent Is Not Directed To An Abstract Idea (*Alice* Step One)

Cisco's step one argument rests on an oversimplification of claim 1 of the '401 Patent and extrinsic evidence that cannot be considered under Rule 12(c).  The FAC and the '401 Patent demonstrate that claim 1[2] is not about "feedback" in the abstract.  It recites a concrete process for improving how a transceiver physically adapts beamforming parameters in real time through an empirical, hardware-implemented feedback loop.  That process constitutes a specific improvement in the functioning of wireless network equipment, not a generic application of an abstract principle.

The FAC pleads that the '401 Patent addresses a concrete technical problem—*i.e.*, traditional beamforming delayed data transmission and consumed overhead because sounding packets were non-directional and range-limited—and discloses a hardware-implemented solution that iteratively improves beamforming parameters in real time.  FAC ¶¶ 85-90, 92; '401 Patent, 3:7-14, 4:38-44 (technical problem of non-directional sounding and control overhead); 1:54-60, 3:29-33, 5:45-56 (iterative transmit-feedback loop optimizing beamforming parameters); 8:12-37, 10:35-47, 11:26-48, Cl. 16 (hardware-implemented transmission controller).  Claim 1 recites (1) storing a codebook of predefined spatial mapping matrices in memory; (2) iteratively transmitting packets using different matrices; (3) receiving channel estimates from the receiver; (4) selecting a matrix based on those estimates; and (5) re-selecting another matrix whenever a measured quality metric fails to meet a defined threshold.  FAC ¶ 87; '401 Patent, Cl. 1.  Each step is technological and grounded in the operation of MIMO hardware.  FAC ¶¶ 84, 92.  Claim 16 of

---

[2] Because Cisco failed to establish claim 1 of the '401 Patent represents any claim of the '401, '870, '765, or '096 Patents, the Court's *Alice* analysis is properly confined to claim 1 of the '401 Patent. *Intellectual Ventures II LLC*, 2018 U.S. Dist. LEXIS 218058, at *14 (court only conducted an "individual analysis of the patentability of … three designated claims" because defendant failed to meet its burden on representativeness across multiple patents with multiple claims).

the '401 Patent, which recites a transmitter apparatus with memory configured to maintain a codebook and a transmission controller configured to perform the same iterative selection steps, illustrates the concrete hardware implementation of this control loop. *See* '401 Patent, Cl. 16.

The specification confirms these steps eliminate the need for repeated sounding procedures and extend transmission range, allowing, in some embodiments, selection among spatial mapping matrices without prior knowledge of channel characteristics. '401 Patent, 5:66-6:11 (describes an empirical feedback loop that continuously refines beamforming parameters based on observed link quality); 4:57-67 (shows embodiment overcoming range limitations of non-directional sounding and maintains connectivity at longer distances). *See also* FAC ¶¶ 84–90 (identifying traditional sounding as overhead-heavy and range-limited and describing the '401 Patent's data-packet transmissions, CSI-based selection, and quality-metric-driven re-selection as the non-conventional solution that improves range, efficiency, and throughput). This is an improvement to wireless-system performance, not a mathematical idea or business concept. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016) (holding claims patent-eligible because they recited a specific improvement in the way computers store and retrieve data); *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1348–49 (Fed. Cir. 2017) (finding eligible claims directed to an improvement in inertial-sensor technology, not to an abstract mathematical formula). Like the self-referential table in *Enfish*, the claimed feedback architecture improves the functioning of the network equipment itself; it does not merely use a computer as a tool to perform an abstract idea.

The Federal Circuit's decision in *Packet Intelligence LLC v. NetScout Systems, Inc.*, 965 F.3d 1299 (Fed. Cir. 2020), confirms that claims improving how communication networks operate are patent-eligible. The court upheld patents that improved packet-flow monitoring by correlating disjointed connections into unified "conversational flows." Those claims "presented a technological solution to a technological problem" and were "not directed to an abstract idea." *Id.* at 1308-10. The same reasoning applies here: claim 1 of the '401 Patent recites a defined control algorithm implemented in transmitter and receiver hardware that empirically improves beamforming capabilities—an improvement in network operation itself.

5

Cisco's step one analogy to "humans toggling equalizer presets in iTunes" relies on two web pages and a screenshot that are neither part of the pleadings nor incorporated in the intrinsic record. Mot. at 7-8. Even if considered,[3] Cisco's analogy fails. A user adjusting audio presets does not perform or approximate the claimed operations: there is no transmitter–receiver pair, no channel-state estimation, no packetized data, no predefined matrix codebook, and no measurable quality-metric threshold. Cisco's analogy replaces objective, hardware-implemented signal processing with subjective human perception. The Federal Circuit has cautioned against oversimplifying claims by stripping them of their technological context. *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1293 (Fed. Cir. 2020) (district court erred by over-abstracting computer-security claims; courts may not ignore a claim's concrete technological context). The '401 Patent's operations occur entirely within physical radio transceiver hardware—implemented by antenna arrays, transmission controllers, and stored spatial-mapping codebooks—not in the human mind or a software preference menu. *See* '401 Patent, 1:54-60 (describing iterative transmissions using predefined spatial-mapping matrices and channel-estimate-based selection); 3:23-31 (matrix selection governed by measured packet-error-rate and data-rate thresholds); 2:3-14 (apparatus comprising antennas, memory, and a transmission controller that iteratively transmits and selects matrices based on received channel estimates); Fig. 1 (illustrating a transmitter and receiver with beamforming modules, and a codebook of predefined spatial-mapping matrices).

Cisco's reliance on *Affinity Labs* and *Orostream* is misplaced. In *Affinity Labs of Tex. v. DIRECTV, LLC*, the claims were "directed not to an improvement in cellular telephones but simply to the use of cellular telephones as tools in the aid of a process focused on an abstract idea." 838 F.3d 1253, 1262 (Fed. Cir. 2016). In *Orostream LLC v. ABS-CBN Int'l*, the court found "feedback adjustment" abstract because the claims lacked any implementation detail and were not tied "to

---

[3] A court may not consider "matters outside the pleadings" on a Rule 12(c) motion without converting it to summary judgment. *PPS Data, LLC*, 2019 U.S. Dist. LEXIS 47492, at *7. The Court should disregard those materials here, especially since discovery has not yet opened. *Id.* at *13, 16 (excluding matters outside the pleadings and explaining the court "would benefit from a more developed factual record …. Courts often deny motions seeking dismissal on the pleadings … in order to obtain a more complete understanding of the claimed invention.").

any computer or any other device" but rather "could be performed in the human mind." 2015 U.S. Dist. LEXIS 134199, at *8-9 (E.D. Tex. Oct. 1, 2015). In contrast, the '401 Patent teaches a specific control architecture—an empirical feedback loop implemented through defined transmitter, receiver, and memory components that employ codebooks of mathematically structured matrices. The transmitter iteratively sends data packets using different predefined spatial-mapping matrices, receives channel estimates from the receiver, and re-selects matrices based on measured reception-quality thresholds. *See* '401 Patent, 1:54–60 (iterative transmissions using predefined spatial-mapping matrices and channel-estimate-based selection); 3:23–31 (matrix re-selection triggered by a defined quality-metric threshold); 2:3–6 (apparatus comprising antennas, memory, and controller implementing iterative feedback); 7:52–59 (codebook using unitary DFT/Hadamard matrices with $Q^HQ = I$). These interrelated hardware and algorithmic elements form a concrete, self-optimizing control system that improves wireless networking performance—precisely the kind of "specific asserted improvement in computer capabilities" the *Enfish* court deemed patent-eligible. 822 F.3d at 1336. As further confirmation, claim 16's apparatus limitations—antennas, codebook memory, and transmission controller—provide structural context demonstrating that the method of claim 1 is executed through tangible components rather than abstract processing that could be performed in the human mind. Accordingly, claim 1 of the '401 Patent is not directed to an abstract idea under *Alice* step one.

3. <u>The '401 Patent Claims Contain Inventive Concepts (*Alice* Step Two)</u>

Even if the Court reached step two, claim 1 of the '401 Patent recites an inventive ordered combination that transforms any alleged abstract idea into a patent-eligible application. The FAC alleges—and the Patent corroborates—that as of October 2007 it was not well-understood, routine, or conventional to (1) iterate across a finite codebook of spatial-mapping matrices during live data transmissions, (2) select among them based on receiver-provided channel-state information (CSI), and (3) adaptively re-select based on measured reception-quality thresholds. FAC ¶¶ 89, 92; '401 Patent 5:30–6:61 (describing iterative transmissions, CSI-based selection, and quality-metric re-selection). Traditional systems used a single, non-directional sounding packet followed by a static

steering matrix, introducing latency and overhead. '401 Patent, 2:63–3:14. The claimed architecture eliminates that bottleneck by substituting empirical optimization through coordinated hardware control—a paradigmatic inventive concept that reconfigures transmitter and receiver operations at the physical layer.[4] *Id.*, 2:65–3:6, 3:7–14, 5:53–6:61 (transmitter hardware and memory executing iterative transmissions and quality-metric-based re-selection to optimize beamforming without repeated sounding); FAC ¶¶ 87–90 (describing iterative transmissions and re-selection based on quality thresholds implemented through transmitter and receiver hardware).

Cisco argues claim 1 "recites generic components" which "cannot transform a claim beyond the abstract," citing *Smartflash LLC v. Apple Inc.*, 680 F. App'x 977, 983 (Fed. Cir. 2017). Mot. at 8. But *Smartflash* involved generic data storage and retrieval on a computer. Here, claim 1 discloses specialized transceiver components—antennas, memory-based codebooks, transmission controllers, and receiver-feedback channels—arranged in a new and useful way, as further illustrated by claim 16's structural embodiment. FAC ¶¶ 89–92; '401 Patent, Cls. 1, 16; 2:65–3:14 (explaining that traditional non-directional sounding had a shorter effective range than beamformed data and was ineffective for forming extended-range channels), 3:23–31 (selection/re-selection among predefined matrices based on reception-quality thresholds), 5:45–6:17 (monitoring packet-error rate/data rate and re-selecting when thresholds are unmet). Whether this specific combination was conventional is a factual issue that cannot be resolved on the pleadings, particularly in light of the FAC's well-pled allegations. *Berkheimer*, 881 F.3d at 1368; *Maxell, Ltd. v. TCL Elecs. Holdings Ltd.*, 2025 U.S. Dist. LEXIS 62101, at *30-31 (E.D. Tex. Jan. 13, 2025); FAC ¶ 92 (the '401 Patent's integration of directional probing, predefined matrices, and CSI-driven selection, was "not routine or conventional as of the priority date").

Cisco's claim that beamforming, sounding, and channel-estimate calculation "were conventional and well known" is misplaced. Mot. at 9. The '401 Patent acknowledges the existence of those processes only to frame what the inventors improved. '401 Patent, 1:34–45

---

[4] Claim 16 reinforces this conclusion by illustrating the tangible hardware through which claim 1 is implemented. Its apparatus limitations demonstrate the method of claim 1 is executed through physical circuitry rather than abstract processing. *Id.*, Cl. 16.

(describing "traditional" explicit sounding that introduced delay and overhead).  The inventive concept lies not in performing sounding or beamforming *per se*, but in how the transmitter and receiver are configured to cooperate empirically through iterative data-packet transmissions, stored directional matrices, and threshold-based adaptation—precisely the kind of ordered combination that transforms conventional parts into a non-conventional system.  *BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) ("[A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces.").

Contrary to Cisco's assertion, the specification discloses how feedback and quality metrics are measured and applied.  It expressly identifies packet-error rate and data-rate metrics and instructs that the transmitter re-select a spatial-mapping matrix when those measured values fall below defined thresholds.  '401 Patent 5:45–6:17.  Figure 4 depicts this control flow, including the decision block that triggers selection of another matrix.  This defined transmit-measure-adapt loop demonstrates that the claimed invention implements a concrete, algorithmic process for empirical adaptation at the physical layer.  In sum, claim 1 of the '401 Patent recites a specific, hardware-implemented control algorithm that empirically improves radio frequency beamforming through iterative transmission, receiver feedback, and quality-metric-based re-selection.  At minimum, whether these empirically defined control operations were inventive or conventional is a factual dispute that cannot be resolved on the pleadings at this stage of the case.

4.      Cisco's "Eligibility Allegations" Argument Improperly Collapses Distinct Patents And Blurs The *Alice* Inquiry

At the end of its *Alice* analysis of claim 1 of the '401 Patent, Cisco argues that "Velocity's eligibility allegations for the '870 Family … fail to identify any nonabstract idea or any inventive concept," an apparent attempt to conflate *Alice* steps one and two.  Mot. at 9.  Rather than directing its analysis to the FAC's allegations about the '401 Patent, Cisco cites to various paragraphs of the FAC concerning different patents in the '870 Family without specifically explaining, by parenthetical or otherwise, which claims of which patents it is purporting to analyze.  *See, e.g.*, *id.* In other words, after invoking claim 1 of the '401 Patent as supposedly representative (and failing),

Cisco pivots to criticize paragraphs from the FAC spanning all four patents. *Id.* at 9-11.

Cisco's reliance on FAC paragraphs drawn indiscriminately from the '870, '765, '401, and '096 Patents violates the representativeness rule. Having never shown the claims are "substantially similar and linked to the same abstract idea" at the threshold step, Cisco cannot treat factual allegations pertaining to different patents as interchangeable. To the extent Cisco's arguments relate to claim 1 of the '401 Patent, they are largely a repackaging of the arguments addressed above in Section III(A)(2)-(3) and fail for the same reasons. *See, e.g.*, *id.* at 10 (arguing without support, in direct contravention of the well-pled allegations of Paragraphs 90-92 of the FAC, that "codebook designs" are not inventive). The only new argument relating to claim 1 of the '401 Patent is that Velocity improperly relies on the specification to allege that the '401 Patent "teaches codebook designs enabling practice in real hardware and protocol contexts …." *Id.* (citing, *inter alia*, FAC ¶ 91). According to Cisco, the supposed problem is that the claim does not "recite the specific, implementable codebook designs." *Id.* But the Federal Circuit permits consideration of the specification to illuminate the technological character of the claims. *TecSec*, 978 F.3d at 1292. The '401 Patent's disclosed DFT/Hadamard codebook structures demonstrate a concrete, hardware-implemented design corresponding to the "storing … predefined spatial-mapping matrices in memory" limitation of claim 1, confirming that the claim recites a real data structure used by transmitter hardware—not an abstract "preset." '401 Patent, 7:43–8:11. Ignoring those disclosures distorts the intrinsic record. And *ChargePoint, Inc. v. SemaConnect, Inc.*, does not mandate otherwise. 920 F.3d 759, 769 (Fed. Cir. 2019) (holding only that the § 101 inquiry must be guided by the claim language, while allowing the specification to inform the claim's technological context). Cisco's attempt to lump together multiple patent claims and conflate *Alice* steps one and two, after failing to show claim 1 of the '401 patent is representative, fails.

**B.    The '343 Patent Is Patent Eligible**

1.    <u>Cisco Has Not Shown That Claim 10 Of The '343 Patent Is Representative</u>

Spanning barely a paragraph, Cisco's showing on representativeness is cursory and insufficient. Mot. at 12. <u>First</u>, Cisco never shows that the system, method, and device claims

recite the same invention.  The '343 Patent contains structural system claims (1–7) and process-oriented method claims (10–16).  Cisco's lone statement that the independent claims "mirror one another" cannot establish identity across distinct claim types.  *See VoIP-Pal.com*, 2024 U.S. Dist. LEXIS 78355, at *10.  Each claim recites different hardware—servers, transmitters, receivers, multiplexers—that affect how data is packaged and transmitted.

Second, Cisco's blanket assertion that all dependent limitations are "conventional and well-known" is the sort of *ipse dixit* courts reject.  *Perdiemco LLC*, 2016 U.S. Dist. LEXIS 135667, at *21–23.  Cisco cites no intrinsic evidence showing that, as an ordered whole, features such as multiplexers performing time-sliced packetization or "semantic" and "presentation" data blocks were conventional.  Third, claim 1 covers a server-transmitter configuration; claim 10 covers a broadcast method.  Cisco never explains why one can represent the other.  Because Cisco fails to show all claims are "substantially similar and linked to the same concept," the Court cannot treat claim 10 as representative of all claims of the '343 Patent.

2.   The '343 Patent Is Not Directed To An Abstract Idea (*Alice* Step One)

Cisco recasts the invention as "formatting data transmissions," but that description improperly strips away the Patent's concrete hardware context.  Mot. at 12.  The '343 Patent identifies a real technical problem in wireless broadcasting: prior-art systems "treat[ed] the entire data transmission as a single, large entity," causing "poor utilization of transmission bandwidth and excessive latency."  FAC ¶ 49; '343 Patent, 2:34–36.  The claimed solution restructures the way information is physically organized and sent through the transmitter stack.  Claim 10 teaches: (1) storing textual information as an integral text data block; (2) partitioning multimedia information into multiple sub-blocks; and (3) coordinating both through time-sliced packet transmission.  '343 Patent, Cl. 10.  This multi-layered coordination between the PHY and MAC layers enables "faster access to the most important [text] part of the transmitted information."  *Id.*, 10:47–50.  Although time-slicing itself was known (*id.*, 1:60–63), the '343 Patent re-architects the payload structure within each slice to achieve reduced access latency.  *Id.*, 9:8–17 (describing formation of a single text-data block followed by presentation data and its partitioning into smaller

11

blocks containing the text and multiple presentation sub-blocks); 9:60–64; 10:47–50 (noting this structure yields faster access to the most important part of the transmission); FAC ¶¶ 49–55 (linking this data-structuring to reduced average access time and low bandwidth occupation). This specific data-structuring within a time-sliced transmission was not routine. FAC ¶¶ 49-50, 53-55.

The FAC accurately reflects the claim language, alleging the invention "greatly enhances the efficiency and aggregate throughput of data transmission in a wireless network" by reducing "average access time" and "maintaining a low bandwidth occupation." *Id.* ¶¶ 53–55 (citing '343 Patent, 10:48–61). Those allegations describe the claimed physical-layer improvement and must be accepted as true on a Rule 12(c) motion. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1126 (Fed. Cir. 2018).

Cisco's authorities—*Dropbox* and *Entropic*—do not help it. *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 537 (Fed. Cir. 2020), involved generic file-storage formatting, not a re-architected radio-transmission protocol. *Entropic Commc'ns, LLC v. DISH Network Corp.*, 767 F. Supp. 3d 1043, 1066 (C.D. Cal. 2025), addressed abstract data formatting and transmission without any new data-transport mechanism. Here, the '343 Patent claims a specific improvement to how wireless devices package, segment, and transmit mixed-content broadcasts, yielding quantifiable performance gains. Under cases like *Enfish*, such claims are not abstract.

Cisco's attack that the FAC relies on "buzzwords" disconnected from the claims is simply wrong. Mot. at 13-14. For example, the FAC's references to "advanced scheduling mechanisms" and "improved data structuring" correspond precisely to the claim elements requiring ordered data packaging and time-sliced scheduling. FAC ¶ 53; '343 Patent Cl. 10; 9:8–17; 10:47–61 (claim 10 discloses storing textual data as a single block and partitioning multimedia into sub-blocks for time-sliced transmission—corresponding to the FAC's "improved data structuring" and "advanced scheduling mechanisms"). Accordingly, claim 10 of the '343 Patent is directed to a specific technological improvement in data transmission, not to the abstract concept of "formatting data."

3.      The '343 Patent Claims Contain Inventive Concepts (*Alice* Step Two)

Even if the claims implicated some abstract idea, they recite an inventive ordered

combination that transforms that idea into a patent-eligible application.  Cisco's *Alice* step two argument incorrectly isolates each step and calls it conventional, but the inventive concept lies in how those steps interact: maintaining the textual block intact while partitioning multimedia into smaller pieces and transmitting both via a unified time-sliced broadcast.  FAC ¶ 55.  This was not routine; prior systems transmitted each data type as a single stream, causing delay.  *Id.* ¶ 49.

At this stage, those factual allegations are dispositive.  Whether the specific coordination of text-block preservation and time-sliced multimedia transmission was well-understood or conventional is a question of fact under *Berkheimer*.  881 F.3d at 1368.  Cisco offers no contrary evidence—only attorney argument.  The '343 Patent's specification confirms non-conventionality by contrasting its structure with prior systems that suffered "excessive" transmission time.  '343 Patent, 2:34–36; 9:14–17.  Those statements distinguish—not concede—the prior art.

Cisco's reliance on *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1286-87 (Fed. Cir. 2018), is misplaced.  There, the court noted that the specification showed the database structures were conventional and preexisting, not newly invented.  In contrast, the '343 Patent teaches new data-structuring and scheduling mechanisms that improve the underlying broadcast hardware.  FAC ¶ 54.  Similarly, *SAP America v. InvestPic*, 898 F.3d 1161, 1163-64, 1170 (Fed. Cir. 2018), involved abstract mathematical calculations divorced from any technological implementation; the '343 Patent's improvement occurs at the physical transmission layer.

The FAC plausibly alleges that implementing the claimed content-aware packetization reduces "the average access time … substantially" and improves PHY/MAC-layer performance.  FAC ¶ 54.  At minimum, the question of conventionality precludes judgment on the pleadings.  *Maxell, Ltd.*, 2025 U.S. Dist. LEXIS 62101, at *30–31.

C.      **The FAC Plausibly Alleges Willful And Indirect Infringement**

1.      The FAC Plausibly Pleads Willful Infringement Claims

Cisco wrongly argues Velocity's willful infringement claims should be dismissed because the FAC does not plead pre-suit knowledge.  Mot. at 14-15.  This Court has held that "at the 12(b)(6) stage there is no pre-suit knowledge requirement" and that "the pleading of post-suit

13

knowledge may suffice to plead willful infringement." *Rsch. Found. for the State Univ. of N.Y. v. Xiaomi Corp.*, 2025 U.S. Dist. LEXIS 56859, at *15 (E.D. Tex. Mar. 3, 2025), *report and recommendation adopted*, 2025 U.S. Dist. LEXIS 55837, at *1 (E.D. Tex. Mar. 26, 2025) (Schroeder, J.). Even if pre-suit knowledge were required,[5] "a well-pled claim for willful blindness is sufficient to state a claim for willful infringement." *Motiva Patents, LLC v. Sony Corp.*, 408 F. Supp. 3d 819, 836-37 (E.D. Tex. 2019).

The FAC's allegations of Cisco's knowledge, which includes knowledge of the Asserted Patents and Cisco's infringement at least as early as the filing of the Original Complaint, and ongoing willfulness are sufficient regardless of timing. FAC ¶¶ 150, 169, 187, 205, 223, 241, 259, 277, 295, 313 (allegations regarding knowledge); *id.* ¶¶ 154-55, 173-74, 191-92, 209-10, 227-28, 245-46, 263-64, 317-18 (allegations regarding ongoing willfulness).

The FAC also alleges specific facts supporting willful blindness. **First**, Velocity's April 15, 2025 pre-suit letter notified Cisco that Velocity owns patents covering "diverse technologies incorporated into the IEEE 802.11ax (i.e., Wi-Fi 6) standard." FAC ¶ 24, Ex. 23. This was preceded by IEEE Letters of Assurance from NXP and ZTE indicating they "owned patents that may be essential to the implementation of 802.11ax." *Id.* ¶ 23. **Second**, the FAC alleges the Asserted Patents are essential to 802.11ax and Cisco's accused products necessarily infringe by complying with that standard. *Id.* ¶¶ 2, 3. **Third**, the FAC alleges that "Cisco did not take a license to the patents-in-suit, but instead continued to infringe "with full and complete knowledge of their applicability to Cisco's Wi-Fi 6 products … At minimum, Cisco willfully blinded itself to its infringement of the patents-in-suit. Cisco believed with high probability that its Wi-Fi 6 products infringed but took deliberate action to avoid learning further details of its infringement." *See* FAC ¶¶ 154-55; 173-74, 191-92, 209-10, 227-28, 245-46, 263-64, 281-82, 299-300, 317-18.

In *Atlas Glob. Techs. LLC v. TP-Link Techs. Co.*, 2023 U.S. Dist. LEXIS 148320, at *6 (E.D. Tex. Aug. 4, 2023), *report and recommendation adopted*, No. 2:21-CV-00430-JRG-RSP,

---

[5] Velocity acknowledges one Cisco-cited case requiring pre-suit knowledge, *Dialect, LLC v. Bank of Am.*, 2024 U.S. Dist. LEXIS 219290, at *4-7 (E.D. Tex. Dec. 3, 2024), is from this District, but respectfully submits the better view is stated in the cases cited above.

Dkt. No. 290 (Aug. 18. 2023), the court found sufficient willful blindness allegations alleging that "Defendants subjectively believed [plaintiff] owned an SEP portfolio on the 802.11ax standard and took actions to avoid learning of the patents contained within that portfolio." 2023 U.S. Dist. LEXIS 148320, at *12.  The court held that "a party need not show that it identified specific patent numbers or made specific accusations of infringement in pre-suit materials to establish a claim of pre-suit indirect infringement, particularly when there is evidence that the Asserted Patents necessarily cover products that comply with the standard." *Id.* at *11-12.  The same applies here.

Accordingly, the FAC plausibly pleads claims for willful infringement, including pre-suit willfulness.  Cisco's Motion should be denied as to the claims for willful infringement.

2.    The FAC Plausibly Pleads Induced and Contributory Infringement Claims

Cisco's one-sentence argument that the FAC's induced and contributory infringement claims should be dismissed "because, like willfulness, these claims also require pre-suit knowledge of the asserted patents" likewise fails.  Mot. at 15.  **First**, "at the 12(b)(6) stage there is no pre-suit knowledge requirement to establish induced infringement." *Rsch. Found. for the State Univ. of N.Y.*, 2025 U.S. Dist. LEXIS 56859, at *14.  The FAC alleges continuing knowledge and ongoing inducement and contributory infringement activities.  FAC ¶¶ 151-52, 170-71, 188-89, 206-07, 224-25, 242-43, 260-61, 278-79, 296-97, 314-15.  These allegations plausibly state claims for induced and contributory infringement.  **Second**, even if pre-suit knowledge were required, the FAC's willful blindness allegations satisfy that standard for induced and contributory infringement.  Cisco's Motion should be denied as to all indirect infringement claims.

**IV.    CONCLUSION**

For the foregoing reasons, Velocity respectfully requests that the Court deny Cisco's Motion in its entirety.  If the Court finds Velocity's pleading deficient in any way, Velocity respectfully requests leave to amend its First Amended Complaint to address any deficiencies.  *See Soar Tools, LLC v. Mesquite Oil Tools, Inc.,* 2020 U.S. Dist. LEXIS 166493, at *23 (N.D. Tex. Sep. 11, 2020) ("[C]ourts typically grant patent-infringement plaintiffs leave to amend unless such a plaintiff has already failed to cure pleading deficiencies in prior amended complaints.").

Dated:  November 7, 2025

Respectfully submitted,


*/s/  Daniel P. Hipskind*
Dorian S. Berger (CA SB No. 264424)
Daniel P. Hipskind (CA SB No. 266763)
Erin E. McCracken (CA SB No. 244523)
BERGER & HIPSKIND LLP
9538 Brighton Way, Ste. 320
Beverly Hills, CA 90210
Telephone: 323-886-3430
Facsimile: 323-978-5508
E-mail: dsb@bergerhipskind.com
E-mail: dph@bergerhipskind.com
E-mail: eem@bergerhipskind.com

Elizabeth L. DeRieux
State Bar No. 05770585
Capshaw DeRieux, LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: 903-845-5770
E-mail: ederieux@capshawlaw.com

*Attorneys for Velocity Communication Technologies, LLC*

16

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on November 7, 2025, a copy of the foregoing document was served on all counsel of record via CM/ECF.

*/s/ Daniel P. Hipskind*
Daniel P. Hipskind